(30 App. Div. 550.)

### STOKES v. POLLEY.

(Supreme Court, Appellate Division, First Department. June 10, 1898.)

1. PAROL EVIDENCE—VARYING WRITTEN INSTRUMENTS.

By a writing under seal, to which one L. was also a party, plaintiff agreed to sell and deliver certain stock to defendant, and defendant agreed to pay therefor partly in cash and partly in notes. The stock was delivered accordingly, and, in an action to recover the value of two of the notes on the ground of their nondelivery, defendant alleged that, about the time when the shares of stock were delivered, it was agreed that the notes should be delivered to L., as the representative and agent of plaintiff, and that defendant was directed to and did deliver them to L. by the authority and direction and with the knowledge of plaintiff. At the trial defendant sought to prove an agreement between plaintiff and L. by which the latter was to receive the notes as his own, and not as plaintiff's agent. *Held*, that this was properly excluded as an attempt to vary the written instrument.

2. Pleading and Proof—Variance.

    *Held,* further, that it was properly excluded because no such collateral agreement was pleaded.

3. Contracts—Performance—Agents—Authority.

    The notes delivered to L. did not provide for interest as had been agreed. Thereafter, plaintiff demanded delivery to himself according to contract, and repudiated any authority on L.'s part. Subsequently the notes came again into defendant's hands, and he destroyed them, and made out new ones, providing for interest, which he then delivered to L. *Held,* that neither delivery constituted a defense, for the first notes did not comply with the contract, and, before the second were delivered, L.'s authority, if any, had been revoked.

Appeal from trial term.

Action by Edward S. Stokes against Grahams Polley. From a judgment entered on a verdict directed by the court, and from an order denying a motion for a new trial, defendant appeals, and from an order denying a motion for an extra allowance plaintiff appeals. Affirmed.

The complaint alleges:

(1) That at the city of New York, on or about the 27th day of September, 1897, the plaintiff entered into a certain agreement in writing with the defendant and with James D. Leary, Daniel J. Leary, and R. T. McDonald, whereby the plaintiff, for the consideration therein expressed, and certain other valuable considerations, agreed to sell and deliver to the defendant thirteen hundred (1,300) shares of the capital stock of the Hoffman House Corporation of New York, of which agreement the following is a true copy:

"Memorandum of agreement, made this 27th day of September, A. D. 1897, by and between Edward S. Stokes, of the city and county of New York, state of New York, party of the first part, and Grahams Polley, of the city of Brooklyn, county of Kings, state of New York, party of the second part, and James D. Leary, Daniel J. Leary, and R. T. McDonald, parties of the third part: Witnesseth, that for and in consideration of the covenants hereinafter contained, by the said party of the second part, the said party of the first part hereby sells, assigns, and agrees to deliver to said party of the second part thirteen hundred (1,300) shares of the capital stock of the Hoffman House of New York, par value one hundred dollars ($100) per share, one hundred and thirty thousand dollars ($130,000), for the sum of one hundred and forty thousand dollars ($140,000), payable as hereinafter stated. Said party of the second part agrees to pay upon delivery of the same the sum of one hundred and forty thousand dollars ($140,000), as follows: Twenty-five thousand dollars ($25,000) cash on the delivery of the stock, and agrees to execute and deliver his promissory notes as follows: One due in four (4) months for thirty thousand dollars ($30,000); one due in five (5) months for fifteen thousand dollars ($15,000); one due in six (6) months for fifteen thousand dollars ($15,000); one due in seven (7) months for fifteen thousand dollars ($15,000); one due in eight (8) months for fifteen thousand dollars ($15,000); one due in nine (9) months for fifteen thousand dollars ($15,000); one due in ten (10) months for ten thousand dollars ($10,000). Said sum to be payable with interest at the rate of six per cent. per annum, and all or any of the said obligations may, at the option of the maker, be paid before maturity, with accrued interest up to date of payment. In consideration of said Stokes depositing $55,000 of said notes, under an agreement made this day with the Knickerbocker Trust Company to protect the said parties of the third part from any loss by reason of their being sureties in a certain action, Stokes v. Stokes, now on appeal in the court of appeals, the said parties of the third part agree to guaranty the payment of said notes. The said party of the first part hereby agrees that upon the delivery of the said notes to him, and in consideration of the same being secured as aforesaid by the parties of the third part hereto, he will forthwith deposit with the Knickerbocker Trust Company of New York City $55,000 of said notes upon the agreement that

in the event of a certain judgment recovered against said Stokes in the superior court of the city of New York, on the —— day of February, 1895, in favor of W. E. D. Stokes, and for which the parties of the third part are sureties on appeal to the court of appeals, being affirmed by the court of appeals. The said trust company, on the production of a proper certificate of the court that the same has been affirmed, shall surrender said notes to the parties of the third part on said parties of the third part as guarantors or indorsers, or the maker of said notes, paying the same with accrued interest to said trust company, the amount so paid to be applied by said trust company in satisfaction of said judgment, and to hold the residue, if any, to the credit of said Stokes. It is understood and agreed between the parties hereto that, in case said judgment shall be affirmed as aforesaid, said notes so deposited shall thereupon immediately become due and payable. In witness whereof the said parties have hereunto set their hands and seals this 27th day of September, 1897.                            E. S. Stokes.       [L. S.]
                                        "James D. Leary.     [L. S.]
                                        "Daniel J. Leary.    [L. S.]
                                        "R. T. McDonald.     [L. S.]
                                        "Grahams Polley.     [L. S.]

"In presence of
    "Jno. Delahunty."

(2) That thereafter, and on or about the 28th day of September, 1897, the plaintiff, in pursuance of said agreement, and at the request of the defendant, delivered, or caused to be delivered, to the defendant, thirteen hundred (1,300) shares of the capital stock of the Hoffman House, of New York, of the par value of $100 per share, and amounting in all to $130,000, in par value, as in said agreement provided.

(3) That at the time of the said delivery the plaintiff had already received from the defendant the sum of $25,000 in cash, mentioned in said agreement as part of the purchase price of said shares, but that at said time the defendant had not made and delivered to the plaintiff any of the promissory notes provided for in said agreement, or paid to the plaintiff any part of the sum of $115,000, for which, in said agreement, the defendant agreed to make and deliver said notes; and "that the said delivery of said shares was made upon the express condition and promise that the said notes should be made and delivered to the plaintiff forthwith, and that the said sum of $115,000, being part of the purchase price of said shares, should be paid to the plaintiff as in said agreement provided."

(4) That thereafter the defendant delivered to the plaintiff the note mentioned in said agreement, due in four months, for $30,000, duly indorsed by the said James D. Leary, Daniel J. Leary, and R. T. McDonald, as in said agreement provided; and that thereafter the defendant delivered to the plaintiff four other of the notes mentioned in said agreement, to wit, the following: One due in five (5) months, for $15,000; one due in seven (7) months, for $15,000; one due in nine (9) months, for $15,000; one due in ten (10) months, for $10,000,—and that all of said notes bore interest at the rate of 6 per cent. per annum, and were duly indorsed by the said James D. Leary, Daniel J. Leary, and R. T. McDonald. That thereupon the plaintiff, in pursuance of said agreement, duly caused the said four (4) notes last mentioned to be duly deposited with the Knickerbocker Trust Company, in trust, in the manner and for the purposes in said agreement described.

(5) That the plaintiff has duly and repeatedly demanded of the defendant the delivery of the two remaining notes mentioned in said agreement, to wit: One due in six months, for $15,000; one due in eight months, for $15,000; "but that defendant has failed to deliver to the plaintiff either of said two notes, to plaintiff's damage $30,000"; and defendant has failed to pay to the plaintiff any part of the sum of $30,000, for which the defendant agreed to make and deliver said two notes; and that the sum of $30,000, being part of the purchase price of said shares, still remains wholly unpaid, and is now due and owing from defendant to plaintiff, with interest thereon from the 27th day of September, 1897.

(6) That the plaintiff has duly performed all the conditions of the said agreement upon his part.

Wherefore plaintiff demands judgment against the defendant for the sum of $30,000, with interest thereon from the 27th day of September, 1897, together with the costs of this action.

The answer is as follows:

(1) The defendant denies the following allegations of the complaint contained in paragraph numbered 3, to wit, "That the said delivery of said shares was made upon the express condition and promise that the said notes should be made and delivered to the plaintiff forthwith, and that the said sum of $115,000, being part of the purchase price of said shares, should be paid to the plaintiff as in said agreement provided," and, on the contrary, alleges that it was understood and agreed, at or about the time when the shares of stock were delivered as set forth in the complaint, that all of the said notes referred to therein should be delivered to James D. Leary, referred to in the complaint as the representative and agent of the plaintiff, and the defendant was directed to and did deliver them to said Leary by the authority and direction and with the knowledge of the plaintiff.

(2) The defendant admits that the notes referred to in the paragraph of the complaint numbered 4 were delivered to the plaintiff, but alleges that said delivery was made to the plaintiff through his representative and agent, the said James D. Leary, who received them from the defendant by the direction and authority of the plaintiff.

(3) He denies the allegations contained in paragraph 5 of the complaint, and alleges that the said notes referred to in said paragraph were duly made by the defendant, and by direction of the plaintiff were delivered by the defendant to James D. Leary, referred to in the complaint as the agent and representative of the plaintiff, and that he has fully and in all respects duly performed all the conditions of said agreement on his part to be performed.

Wherefore defendant demands judgment that the complaint herein be dismissed, with costs.

Argued before BARRETT, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

David McClure, for appellant.

Charles E. Hughes, for respondent.

O'BRIEN, J.　On the pleadings, as upon the trial, the issue was a narrow one, embracing the single question as to whether the defendant delivered the two notes of $15,000 each pursuant to the agreement. That the plaintiff had performed all the conditions of the agreement, and had delivered the stock, was admitted. It was also conceded that the defendant had made the cash payment, and delivered to the plaintiff five of the seven notes called for by the contract. What remains, therefore, is to determine whether the defense was made out, by sufficient evidence to warrant its submission to the jury, "that it was understood and agreed at or about the time when the shares of stock were delivered, as set forth in the complaint, that all of the said notes referred to therein should be delivered to James D. Leary, referred to in the complaint as the representative and agent of the plaintiff, and the defendant was directed to and did deliver them to said Leary by the authority and direction and with the knowledge of the plaintiff." It will be noticed that the defendant denies that the notes were to be delivered forthwith at the time of the delivery of the stock; and it is urged that, as the manner of delivery was not provided in the agreement, it was competent for the defendant to show that, pursuant to an outside or collateral agreement made between James D. Leary and the plaintiff, all the notes were

to be delivered to the former, and to be applied, as it is conceded they were applied, as provided in the agreement, except as to the two notes in suit, which, it is claimed, were to be retained by Leary as indemnity to him for the obligation which he had entered upon as surety for the plaintiff on a bond which the latter had given as receiver of the Hoffman House Corporation; and that, pursuant to such agreement, the defendant delivered the two notes to Leary for the plaintiff, and at his direction, and thus fully complied with his agreement. The defendant does not claim that he was a party to such an agreement, or that he was present when it was made, or that he knew of it up to the time he received the stock. The defendant was permitted to testify fully as to what was said to him by the plaintiff as to the disposition of the notes, as he was permitted to tell fully all that occurred at the Chemical Bank interview, when the stock was delivered. What was excluded was an attempt to prove an agreement between the plaintiff and Leary, by which the latter got the notes in his own interest and on his own behalf, and not on account of the plaintiff, or as his agent. The evidence sought to be adduced by the defendant to establish such a collateral agreement by parol was excluded, and, we think, properly, for the reasons that it was an attempt to vary by parol a written instrument under seal, and, secondly, no such collateral agreement was pleaded. It must be remembered that Leary, as well as the defendant, was a party to the written agreement; and it appears that before the contract was reduced to writing its terms were the subject of a long discussion, and there is no pretense but that it correctly expressed the agreement of the parties. Thus in regard to protecting the Learys and McDonald it provided that, in consideration of the indorsement of the notes by the Learys and McDonald, four of the notes should be deposited with the Knickerbocker Trust Company to indemnify them as sureties upon a bond which they had given for the plaintiff upon an appeal to the court of appeals in an action between him and W. E. D. Stokes. Whatever occurred between Leary and the plaintiff as to Leary's right to retain the two notes here in controversy, it was made no part of the written agreement. The authorities are uniform in holding that a parol contemporaneous agreement is not competent to vary or contradict the terms of a written document. There are, of course, exceptions to this rule, one of which is relied upon by the appellant, claiming that, as the writing is silent as to the manner of the delivery of the notes, therefore an oral agreement was competent to supplement what was lacking in the writing. Construing the written document between the parties, we do not think it susceptible of the view that it is silent upon the question of the disposition of the notes, because it is fairly to be inferred that all the notes were to be delivered to the plaintiff, and that after such delivery to him he should deposit four of the notes with the Knickerbocker Trust Company. If we assume, however, that delivery to the plaintiff is not expressly provided by the agreement, before the appellant would be entitled to the benefit of the exception to the general rule as to proof of any separate oral agreement respecting a matter upon which the document itself is silent, it should further appear that such oral agree-

ment was not inconsistent with the terms of the written agreement, and the court, from the circumstances, should be able to infer that the parties did not intend the document to be a complete and final statement of the whole transaction between them. It is not contended that the written agreement was not a complete and final statement of the whole transaction as between the plaintiff and the defendant, and it would be extending the exception beyond what is sanctioned by any authority to permit the defendant, one of the parties to the written agreement, to vary its terms by showing an oral understanding, to which he was not a party, and in which he had no interest, between the plaintiff and Leary, two of the other parties to the written agreement, and to avail of such oral agreement as a defense against carrying out the obligations which he had assumed by the written contract. To permit this would be entirely to destroy the well-settled rule that a contract under seal cannot be modified by a parol executory contract.

We think it equally clear that it was proper to exclude proof of such a collateral agreement because not pleaded. The answer, in effect, alleged that by direction of the plaintiff the notes were given to Leary as the plaintiff's agent and representative. What was sought to be proven by the evidence excluded was that pursuant to an agreement between Leary and the plaintiff the notes were delivered to Leary by the direction of the plaintiff, to be held by Leary for his own benefit, and in his own interest. Even if what was sought to be proven had been alleged, namely, that there was some agreement made between Leary and the plaintiff by which the former was entitled to receive the notes to secure him on obligations which had arisen from his transactions with the plaintiff, it is doubtful if any such agreement would be available as a defense, because Leary was not a party to the suit, and neither by demurrer nor answer was it claimed that he was a necessary or a proper party. Under the agreement, the defendant was liable as the purchaser of the stock, and was bound to deliver the notes to the plaintiff; and while it was competent for him to prove a conversation in which the delivery to Leary was arranged for, this did not warrant bringing the transactions between Leary and the plaintiff into this action. The difference, therefore, between what was alleged and what was sought to be proved is apparent.

Regarding the written agreement as the instrument defining the rights and obligations of the parties, it remains to consider the facts with respect to the delivery of these two notes, and as to whether, as claimed by the answer, there was a delivery to Leary in accordance with the plaintiff's direction. On September 28th the plaintiff, the defendant, and James D. Leary met at the Chemical Bank for the purpose of carrying out the agreement. The certificates of stock were then held by the bank as security for a loan to the plaintiff, and it was arranged with the bank that the shares should be released on the promise of Leary to deposit with the bank the next morning the $30,000 in notes; and thereupon the plaintiff delivered the stock to the defendant, who gave his receipt. It would appear that at that time none of the notes had been signed by the defendant, although they had been indorsed by the others; and when, according to Polley,

the plaintiff asked for the seven notes at the Chemical Bank, Leary said that his son, Daniel J. Leary, had them out on the Speedway, which the Learys were then engaged in constructing. And in answer to the question as to whether Leary gave any reason for not delivering them, except that his son had them, Polley thus answered:

"No other reason. That is the only reason. Mr. Stokes was being asked to surrender the stock then. I don't recollect, when Mr. Leary said his son had them, that he said how soon he would get them for Mr. Stokes. He told him his son had them, and he would get them. I don't recollect how soon he said he would get them. When Mr. Leary told Mr. Stokes he would get him the notes, Mr. Stokes then handed the stock over to me. I gave my receipt for it, and I didn't hear Mr. Leary tell Mr. Stokes he should have the notes that afternoon." He further testified: "Mr. Stokes told Mr. Leary there for him to keep the notes. I didn't understand him to say when he would get the notes. Mr. Leary said he didn't have the notes there. I won't say that he said he would get them for Mr. Stokes. I can't say that. He promised to get them. I don't recollect when he said he would get them. Mr. Leary didn't say when he would get them. Mr. Stokes and Mr. Leary had a conversation about notes, but I was doing something else. * * * Mr. Stokes said to Mr. Leary at the Chemical Bank, 'You keep them;' told me to give the balance of the notes to Mr. Leary. That is all. * * * The next day I signed those notes, and handed them back to Mr. Leary."

Polley makes this clear by saying that the only occasion when anything was said by the plaintiff to him about giving the notes to Leary was on the occasion at the Chemical Bank; that the next time the plaintiff saw him he asked for the notes, and that he told the plaintiff he had given them to Mr. Leary. "After I told Mr. Stokes I had given them to Mr. Leary, he repeatedly asked me again for the notes, and I always told him the same thing." It was thus made to appear by the defendant's testimony that he never delivered the two notes to the plaintiff personally, but that, after signing, subsequent to the interview at the Chemical Bank, he delivered them to Leary; and he insists that this was a proper delivery, in view of the plaintiff's having told him to do so. The defense, therefore, involves two propositions: (1) That the plaintiff assented to a delivery of the notes to Leary in performance of the defendant's contract; and (2) that due delivery had been made before this assent was withdrawn.

In support of the first of these propositions, while we have the defendant's statement that the plaintiff said to give the notes to Leary, this is to be considered in connection with the attitude of the parties as they stood at the time this direction was given. The plaintiff was the seller of the stock, and Leary was jointly interested with the defendant in its purchase. When asked for the delivery of the stock, the plaintiff demanded the seven notes, and, instead of their being then and there delivered, the evidence shows that they were not then even signed by the defendant, but that Leary induced the bank to release the stock on his guaranty that he would produce the $30,-000 note the next morning; and Leary was equally persuasive in getting the plaintiff to surrender the stock to the defendant, telling the latter to give the notes to Leary, from whom, in discharge of the defendant's obligation, he expected to receive them. There is no suggestion that at that time the plaintiff had waived his right to receive the notes, or intended that the defendant should deliver these two in suit to Leary to the end that the latter might retain them for his own benefit. In other words, there was no suggestion of any new

agreement, the defendant merely contending that plaintiff told him to give the notes to Leary.    As shown, the failure of the plaintiff then and there to receive the notes was due to the statement of Leary that his son had them on the Speedway, and that he would get them; and there is the significant absence of any avowal on Leary's part that he intended to get possession and retain the notes on his own behalf. There is no pretense that Leary was the plaintiff's agent by virtue of any general authority that he had to represent him, but, on the contrary, it appears that he was jointly interested with the defendant in the purchase of the stock; and the defendant could not relieve himself from the obligations imposed upon him of discharging his contract, except by showing that Leary was specially authorized by the plaintiff to receive the notes.

The plaintiff was not relieving the defendant from the obligation of his contract, but, on the contrary, he was demanding performance, and surrendered the stock only on the assurance that he should have the notes which the contract called for.    Mr. Leary was not acting on the plaintiff's behalf, but was present as a co-purchaser with the defendant for the purpose of securing the purchased property; and when the plaintiff demanded the agreed price as a condition precedent to delivery he stood sponsor for the performance of the defendant's written obligation, and in this way persuaded the plaintiff to deliver the shares.    Deducing, however, the strongest inferences that in any aspect can be drawn from the defendant's statement that the plaintiff told him to deliver the notes provided by the agreement to Leary, let us assume that, if this had been done before the right to receive them had been revoked, it would have been a good delivery. It will not be questioned, as matter of law, that a mere naked direction to the defendant to deliver, or authorization to Leary to receive the notes for him, could, at any time until they were actually delivered, have been revoked by Mr. Stokes.    The contract called for notes bearing interest at 6 per cent. per annum; but the defendant says that these notes in suit did not contain the words "with interest" when he signed them and placed them in Leary's hands, and that at that time they were drawn to the order of the plaintiff.    He testified that subsequently these notes got back into his possession; that he then saw that there had been written into them, after he had signed and delivered them to Mr. Leary, the words "with interest"; that, instead of being made payable to the plaintiff alone, the words "or bearer" had been inserted; but that he did not know who had altered the notes, or under whose direction it had been done.    "I never did authorize anybody to alter those notes in any way, shape, or form." It will be noticed, therefore, that the notes delivered to Leary did not conform to the contract, and the defendant is not in a position to rely on those two notes as a discharge of his obligation under the contract.    The defendant admits that while the notes were thus held by Leary the plaintiff was continually demanding delivery, and that when he told him Leary had them he said that Leary had no business to have them, and that the plaintiff went so far as to threaten him with suit, saying that he would compel him to comply with his agreement.    There can be no question, therefore, that the defendant understood fully that, even if originally the plaintiff was willing that

Leary should receive the notes for subsequent delivery to plaintiff, the latter changed his mind, going so far as to ask the defendant to make out new notes, and agreeing to indemnify him if he would do so (which the defendant refused), and, as already said, threatening him with suit if he did not comply. This was the attitude of the parties up to the 24th of October, when the original notes were delivered back to the defendant and destroyed, and the two notes substituted, which new notes were again delivered to Leary; but whether they bore the indorsement, as the contract required, of the Learys and McDonald, does not appear. But whether they did or not, the defendant having notice that any authority to deliver the notes to Leary for his account had been revoked, and having thereafter deliberately destroyed the original notes, and made new ones, how can it be said that he delivered the original notes in performance of the contract? Whatever authority he had originally when he signed the first notes, that had been withdrawn when he signed the substituted notes. The defense rests on the alleged delivery of the original notes, which, as we have seen, did not conform to the contract, and therefore was not a good delivery. Moreover, they were destroyed by the defendant, and it is evident that the plaintiff cannot enforce any obligation thereon, nor can the defendant claim that they effected a payment of his obligation. The only position left is that the new notes which he made and delivered to Leary relate back to the original date, and are affected and controlled by the original authority which the plaintiff gave to Leary to receive them. But it is difficult to follow this reasoning when we have in mind the fact that until there was an actual delivery pursuant to the contract, such authorization could be revoked; and that the defendant knew it was revoked is beyond any controversy, on his own testimony. Besides, in destroying the original notes, he elected to treat them as though they were not in payment of the purchase price, and thereafter he remained liable to make that payment. Occupying that position, and with the plaintiff demanding delivery to himself personally of the payment called for by the contract, the defendant has failed to show, on his own testimony, that he delivered them to Leary as the agent or representative of the plaintiff; for any such relation had long before that time been repudiated, if it ever had existed. Equally untenable is the contention that, as Leary was an agent to receive the notes, and as such agency was one coupled with an interest, the plaintiff could not revoke it. It is true, the answer alleges an understanding and agreement that the notes should be delivered to Leary "as the representative and agent of the plaintiff." But it was not sought to be proved that any such agreement or understanding was made between the plaintiff and the defendant, nor was such an allegation equivalent to an averment that Leary's agency was one coupled with an interest. It will, therefore, be seen that no such agency was pleaded; and, if it had been, it would, as varying the terms of the written agreement, have been inadmissible. We therefore agree with the conclusion arrived at by the learned trial judge that the defense pleaded of delivery was not proven, and that nothing was left for the jury to pass upon, because upon the undisputed facts the defendant

had failed to deliver the two notes around which this controversy wages to the plaintiff, pursuant to his agreement.

There are numerous exceptions to rulings upon evidence, most of which are disposed of by what has been said in considering the issue presented by the pleadings. Most of them relate to the exclusion of evidence to show the oral agreement between Leary and the plaintiff, claimed to have been entered into at the time of or prior to the written agreement, and not embraced therein. A similar ruling was made excluding evidence as to the manner of the delivery to Leary of the notes which went to the Knickerbocker Trust Company. But as there was no dispute as to the deposit of such notes, and as it would appear that under the terms of the agreement Leary had an interest in their deposit, such evidence could not have any relevant or material bearing upon the question of the disposition of these two notes in suit, and was properly excluded. It was sought to be proved that after Leary had obtained possession of the first notes, the plaintiff was willing to give him other security if he would surrender such notes. This was clearly inadmissible, because immaterial. It could have no bearing upon the defendant's obligation to deliver the notes, which was the only point in issue. Whatever offers the plaintiff made to Leary afterwards to get the notes did not affect the question of this due delivery. And throughout the trial, as upon this appeal, the confusion to be noticed as to the defendant's attitude grows out of the view, erroneously entertained, that he was justified in injecting Leary into the case, and in utilizing the differences between Leary and the plaintiff as a fender to ward off the fulfillment of his own obligation. We have already called attention to the fact that Leary was not a party to this action, and the judge was right in excluding evidence which did not support the defense of due delivery of the notes. As we have found no error, therefore, either in the direction made by the court on the evidence as presented, or in the rulings upon evidence, we think that the judgment appealed from should be affirmed, with costs.

The plaintiff appeals from an order denying a motion for an extra allowance. Such a motion is only granted as provided by the Code in difficult and extraordinary cases, and it cannot be said that this action is so clearly within that class that no discretion was vested in the trial judge, who was favorably situated to determine that question; and we do not think that his determination should be disturbed. The order is accordingly affirmed, with $10 costs to the defendant.

All concur.

(23 Misc. Rep. 439.)

## In re WOLFE'S ESTATE.

(Surrogate's Court, Westchester County. April, 1898.)

LEGACY TAX—FOREIGN CORPORATION.

A foreign corporation, though empowered by Laws 1893, c. 557, "to receive, take, hold, and enjoy" property within the state, subject in respect of devises and bequests to Laws 1860, c. 360, is not thereby exempt from tax, under Laws 1892, c. 399, on legacy to which such corporation succeeds.